IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN THE MATTER OF | : | CHAPTER 13 |
| MARY ANN GRAYBOYES, | : | |
| Debtor | : | Bkrtcy No. 02-33530-KJC |

_____

| | | |
|---|---|---|
| | : | |
| FIRST BUSINESS CREDIT CO., | : | CIVIL ACTION |
| Appellant, | : | |
| v. | : | |
| | : | No.  05-1780 |
| | : | |
| MARY ANN GRABOYES, | : | |
| Appellee. | : | |


**MEMORANDUM OPINION**

J. Davis                                                    February 22, 2006
_____

_____Presently before the Court is an appeal from a March 11, 2005 Order entered by the

Honorable Kevin J. Carey, United States Bankruptcy Judge, sustaining the objection of appellee

Mary Ann Graboyes ("debtor") to the claim of appellant First Business Credit Company

("FBCC") against the bankruptcy estate.  For the following reasons, this Court affirms the

judgment of the bankruptcy court.

I.      **Factual and Procedural History**

        The parties concede the accuracy of the bankruptcy court's recitation of the factual and

procedural history of this litigation in its March 11, 2005 opinion.  This Court briefly

summarizes this factual predicate.

        In 1992, debtor and her husband, Seymour Graboyes ("debtor's husband"), sought tax

1

advice from attorney John Koresko ("Koresko") to resolve the tax debt of debtor's husband in connection with his ownership of a bar.  (See March 11, 2005 Order, at 2).  Koresko demanded a $5,000 retainer for his representation of debtor and her husband.  (Id.).

To finance the retainer, debtor and her husband sought and obtained a loan from FBCC, a for-profit lender with Koresko's brother serving as its sole officer and director.  (Id., at 2, 2 n.4).  On February 25, 1992, debtor and her husband executed a mortgage note ("note") in favor of FBCC in the amount of $10,000 or "so much of said principal sum as shall have been advanced," with an interest rate of 18.36%, to be repaid in monthly installments of $200 for 23 months.  (See Note, attached as Ex. 11).  The principal balance, accrued interest, and other costs identified in the note were due after two years.  (Id.).

To secure the note, debtor and her husband also executed a mortgage (the "mortgage") granting FBCC a lien against a single condominium unit in a condominium complex at 316 Glen Lane, Elkins Park, Pennsylvania (the "property").  (See Mortgage, attached as Ex. 11).  The mortgage was recorded on February 27, 1992 with the Recorder of Deeds Office for Montgomery County, Pennsylvania.   (Id.; March 11, 2005 Opinion, at 3).

On February 28, 1992, debtor and her husband filed a voluntary chapter 13 bankruptcy petition in the bankruptcy court of the Eastern District of Pennsylvania (the "1992 bankruptcy action").  (Id., at 3).  The schedules for the bankruptcy petition listed FBCC as a secured creditor with a secured claim in the amount of $5,000, the amount loaned by FBCC to debtor and her husband for retention of Koresko's legal services.  (Id.).  This secured claim was consistent with Koresko's signed statement in the bankruptcy litigation, averring that he had been paid a $5,000 retainer for legal services rendered in connection with the bankruptcy case.  (Id.).

2

The 1992 bankruptcy action was dismissed on March 18, 1993. (Id., at 3). On May 14, 1993, the chapter 13 trustee sent Koresko a check in the amount of $3,237, a refund for payments made by debtor and her husband to the chapter 13 trustee (the "refund"). (Id.). On May 20, 1993, Koresko sent to debtor's husband an invoice for legal services, indicating payment of the original retainer, and a check in the amount of $1,500. (Id., at 3-4). Koresko subtracted $1,626.75 from the refund, labeling this fee an "advance against second mortgage." (Id., at 4).

Debtor and her husband never made any payments on the note. (Id., at 4). Nor did FBCC make any demand on debtor or her husband for payment of the note. (Id.). On September 23, 2002, debtor filed a voluntary chapter 13 bankruptcy petition in the bankruptcy court for the Eastern District of Pennsylvania. (See Bankruptcy Docket Sheet, attached as Ex. 4, at Doc. No. 1). On January 30, 2003, FBCC filed a proof of claim in the debtor's bankruptcy case in the amount of $49,130.78, plus interest and attorney fees. (See January 30, 2003 Proof of Secured Claim, attached as Ex. 16; June 22, 2004 Order, attached as Ex. 15, at 4). On March 24, 2003, FBCC filed an amended proof of claim in the amount of $61,553.03. (Id.). This figure, as of March 24, 2003, reflected the amount of principal ($6,500) and interest ($33,225.97) under the note ($39,725.97), and the attorney's fees FBCC incurred in connection with debtor's bankruptcy court proceedings ($23,990). (See March 24, 2003 Proof of Secured Claim, attached as Ex. 16; June 22, 2004 Order, at 5).

On February 24, 2003, the debtor, while in bankruptcy, initiated an adversary proceeding against FBCC by filing a complaint to determine the validity, priority, and scope of the lien held by FBCC against the property. (See Adversary Proceeding Docket Sheet, attached as Ex. 5, at Doc. No. 1). On June 22, 2004, Judge Carey ruled in plaintiff's adversary proceeding that

FBCC was a secured creditor of debtor's estate, based upon FBCC's lien on debtor's property. (See June 22, 2004 Order).  However, in making this finding, Judge Carey noted that debtor did not "specifically contest the amount of the claim," and, therefore, the June 22, 2004 Order made "no ruling concerning the amount or appropriateness of the interest, fees, or any other charges which may be included in FBCC's proof of claim."  (Id., at 9 n.11).[1]

On October 8, 2004, debtor filed an objection to FBCC's proof of claim.  (See Debtor's Objection, attached as Ex. 14).  The parties submitted briefs in support of their respective positions.  (See Briefing Schedule, attached as Ex. 12; Parties' Submissions, attached as Ex. 8-11).  On November 23, 2004, Judge Carey held a hearing on the claim objection.  (See Transcript of November 23, 2004 Hearing, attached as Ex. 7).  The parties also submitted post-hearing responses.  (See FBCC Post-Hearing Response, attached as Ex. 6).

On March 11, 2004, Judge Carey issued an opinion finding that the amount of FBCC's secured claim was $6,626.00 plus simple interest.  (See March 11, 2004 Opinion, attached as Ex. 2, at 11).  Judge Carey reasoned that debtor could assert violations of Pennsylvania's usury law, 41 P.S. §§ 101 et seq. ("Act 6"), as a recoupment defense to FBCC's proof of claim, despite the inability to assert these violations as an affirmative cause of action because of the expiration of the applicable statute of limitations.  (Id., at 4 n.9).  Judge Carey then reasoned that FBCC was not entitled to recover on its claim either interest in excess of 10% or attorney's fees incurred in connection with bankruptcy court proceedings involving debtor and her husband, as the recovery

---

[1]During the bankruptcy court litigation, FBCC filed a confessed judgment action against debtor's husband in the Court of Common Pleas for Montgomery County, Pennsylvania.  (See FBCC's Post-Hearing Response to Debtor's Objection, attached as Ex. 6, at 1).  A confessed judgment was entered against debtor's husband on September 11, 2003.  (Id.).

of these charges pursuant to the terms of the note violated Act 6.  (Id., at 4-10).  Accordingly, Judge Carey entered an Order (the "March 11, 2005 Order") limiting FBCC's secured claim to the principal balance of the note, including the $5,000 advance for Koresko's retainer fee and the $1,626.75 advance against the mortgage that was deducted from debtor's refund, and simple interest on this principal balance at a lawful rate of 10% per year.  (Id.).

On March 21, 2005, FBCC filed a notice of appeal of the March 11, 2005 Order.  (See Notice of Appeal, attached as Ex. 1).  FBCC filed a brief in support of its appeal on May 3, 2005 (Doc. No. 3).  On May 18, 2005, debtor filed a brief in opposition to the appeal (Doc. No. 4). FBCC submitted a reply brief on June 10, 2005.  (Doc. No. 7).

II.    Discussion

Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 158(a).  In applying the appropriate standard of review, this Court reviews the bankruptcy court's legal determinations *de novo*, its factual findings for clear error, and its exercise of discretion for an abuse thereof.  See, e.g., In re Rashid, 210 F.3d 201, 205 (3d Cir. 2000).

FBCC alleges an array of errors in the bankruptcy court's procedural and substantive conclusions concerning debtor's Act 6 recoupment defense to FBCC's proof of claim.  In particular, FBCC claims that the bankruptcy court erred not only in procedurally permitting FBCC to assert Act 6 violations as a recoupment defense to FBCC's proof of claim, but also in finding that the loan transaction meets the substantive requirements of Act 6, thereby triggering Act 6's consumer-based limitations both on the charging of interest and on the recovery of attorney's fees in connection with residential mortgage loan transactions.

A.    **Procedural Availability of Act 6 as Recoupment Defense**

5

FBCC offers three reasons why the bankruptcy court erred in finding that, despite the expiration of the statute of limitations, debtor may utilize Act 6 as a recoupment defense to FBCC's proof of claim.  (See FBCC's Br., at 7-20).  First, FBCC claims that the factual circumstances of this litigation preclude the availability of Act 6 as a recoupment defense.  (Id., at 7-15).  Second, FBCC claims that debtor is judicially estopped from using Act 6 to contest FBCC's proof of claim.  (Id., at 16-19).  Third, FBCC contends that the doctrine of collateral estoppel precludes FBCC from arguing the applicability of Act 6 to the note and mortgage.  (Id., at 19-20).

### 1.     Recoupment Defense

FBCC argues that the bankruptcy court erred in holding that debtor may available herself of Act 6's residential mortgagee protections as a recoupment defense despite the expiration of the statute of limitations.  (See FBCC's Br., at 7-15).   FBCC reasons that debtor may not raise Act 6 violations as a recoupment claim under the factual circumstances of this litigation, where debtor's recoupment claim would void FBCC's underlying obligation and where debtor is using her recoupment claim affirmatively, prior to a judgment or enforcement action against debtor. (Id.).

This Court disagrees.  Under Pennsylvania law, which governs the validity of plaintiff's Act 6 recoupment defense, a defendant may raise violations of state law through a recoupment defense, although these violations could not be asserted affirmatively as a counterclaim due to the expiration of the statute of limitations.  See, e.g., Mellon Bank v. Pasqualis-Politi, 800 F. Supp. 1297, 1301 (W.D. Pa. 1992).  There are several requirements to the applicability of the equitable doctrine of recoupment under Pennsylvania law.  First, recoupment must be asserted

defensively, as a reactive strategy to reduce the value of another party's particular claim, rather than offensively, as an independent cause of action.  See, e.g., Bull v. U.S., 295 U.S. 247, 262 (1935) ("recoupment is in the nature of a defense arising out of some feature of the transaction upon which the plaintiff's action is grounded"); Commonwealth of Pa. v. Berks County, 72 A.2d 129, 130 (Pa. 1950) (adopting Bull Court's definition of "recoupment"); c.f. Algrant v. Evergreen Valley Nurseries Ltd. P'ship, 126 F.3d 178, 184 (3d Cir. 1997) (prohibiting plaintiff under federal common law from using doctrine of recoupment in declaratory judgment action to circumvent statute of limitations and to void notes allegedly procured through fraud in violation of federal Securities Exchange Act and state securities laws, as recoupment is "defensive claim which can only be asserted in response to an independent action instituted by another party"). Second, Pennsylvania law requires that the legal predicate for the recoupment defense (i.e., the violation of state law) arise out of the same transaction from which plaintiff's claim springs. Pasqualis-Politi, 800 F. Supp. at 1301 (describing and applying Pennsylvania's "mutuality requirement"); see also Berks County, 72 A.2d at 130 (recoupment defense available to adverse party so long as party's claims "have grown out of the transaction which gave rise" to plaintiff's suit).  Third, as a defense, the amount of the recoupment is limited to the value of the plaintiff's claim.  See, e.g., Commonwealth of Pa. v. Orsatti, Inc., 292 A.2d 313, 316 (Pa. 1972) (recoupment right does not entitle defendant asserting recoupment defense to excess of amount over plaintiff's claim); Edwards v. Pa. Dep't of Pub. Welfare, 384 A.2d 293, 296 (Pa. Commw. Ct. 1978) (recoupment defense "is limited to such amounts as the state [plaintiff] has claimed

against the defendant").[2]

Bankruptcy courts in the Third Circuit have uniformly determined that a proof of claim constitutes an action to collect a debt, and, therefore, that a debtor may raise transgressions of consumer credit statutes defensively as an objection to a proof of claim. See, e.g., In re Crisomia, 2002 WL 31202722, at *4 (Bankr. E.D. Pa. 2002) (noting that "courts have found that a debtor may raise TILA violations defensively in an objection to a proof of claim filed defensively in an objection to a proof of claim filed more than a year from the asserted TILA violation as a matter of recoupment or set-off"); In re Soto, 221 B.R. 343, 359 (Bankr. E.D. Pa. 1998) (debtor may assert TILA violations as a recoupment defense to bank's proof of claim for debt owned in connection with secured loan); see also In re e.Spire Commc'n, 293 B.R. 639, 648-649 (Bankr. D. Del. 2003) (recoupment available as defense to proof of claim under Maryland law).[3]  More importantly, at least one bankruptcy court has determined that Pennsylvania law permits Act 6 to be used as a recoupment defense to reduce a creditor's

---

[2]This analysis is similar to the treatment of recoupment under federal common law.  Both the Third Circuit and the Pennsylvania Supreme Court have declared that, pursuant to federal common law, a party may raise statutory consumer credit violations through a recoupment defense, although these violations could not be asserted affirmatively as a counterclaim due to the expiration of the statute of limitations.  See, e.g., Silverman v. Eastrich Multiple Investor Fund, 51 F.3d 28, 32 (3d Cir. 1995) (permitting loan guarantor to raise ECOA claim in declaratory judgment action in federal court as defense to confession of judgment entered against her in state court, despite expiration of statute of limitation period); Household Consumer Discount Co. v. Vespaziani, 415 A.2d 689, 693-96 (Pa. 1980) (permitting borrowers to raise TILA violations as recoupment defense).  Neither party argues that a conflict of law exists between the treatment of the recoupment doctrine under Pennsylvania law and its treatment under federal common law.

[3]Although many of these bankruptcy court decisions applied federal common law, this Court has uncovered no case law to suggest that Pennsylvania law does not characterize a creditor's proof of claim as an adversary action to which a debtor may raise a recoupment defense.  Nor has FBCC identified any such decision.

bankruptcy claim, pending satisfaction of the mutuality requirement.  See, e.g., In re Kenderdine, 118 B.R. 258, 264 (Bankr. E.D. Pa. 1990) (rejecting defendant's defense that debtor's damages claim under Act 6 may not be asserted as recoupment defense under Pennsylvania law after expiration of limitation period).

Applying Pennsylvania law, this Court affirms the bankruptcy court's conclusion that the debtor may raise violations of Act 6 as a recoupment defense to a creditor's proof of claim.  (See March 11, 2005 Opinion, at 4-5 n.9).  All of the requirements of the recoupment defense under Pennsylvania law are met.  See 2 Standard Pennsylvania Practice 2d § 13:221 ("The defense of recoupment arises out of the same transaction as the plaintiff's claim, survives as long as the cause of action upon the claim exists, and is a doctrine of an intrinsically defensive nature founded upon an equitable reason, inhering in the same transaction, and constituting an alleged reason why the plaintiff's claim in equity and in good conscience should be reduced.").  First, debtor has asserted FBCC's alleged violations of Act 6 defensively, in direct response to FBCC's proof of claim, which is considered an affirmative cause of action to collect a debt, and in indirect response to FBCC's confessed judgment against debtor's husband on the note in the Pennsylvania Court of Common Pleas for Montgomery County.  See, e.g., In re Crisomia, 2002 WL 31202722, at *4-6 (permitting debtor to assert TILA non-disclosure claims defensively, as a method to offset any proof of claim lodged by creditor).  Second, the alleged Act 6 violations, the factual predicate for debtor's recoupment defense, are inherent in the execution of the note and mortgage, the very transaction that forms FBCC's proof of claim.  See, Pasqualis-Politi, 800 F. Supp. at 1301; Kline v. Blue Shield of Pa., 556 A.2d 1365, 1370 (Pa. Super. Ct. 1989) (party may assert recoupment defense to breach of contract action when defense arises out of same

contractual transaction as plaintiff's claim).   Third, debtor does not seek damages in excess of FBCC's proof of claim, but, instead, seeks to limit the interest and attorney's fees elements of FBCC's proof of claim to that amount which FBCC is legally permitted to collect on a residential mortgage loan under Act 6.

## 2.    Judicial Estoppel

FBCC argues that the bankruptcy court erred by failing to apply the doctrine of judicial estoppel to preclude debtor from asserting Act 6 violations, based upon debtor's prior inconsistent statements on the applicability of Act 6. (See FBCC's Br., at 16-19).  In particular, FBCC argues that the debtor initially identified the debt as commercial in its 1992 Chapter 13 schedules, but now "reclassifies" the debt as a "non-commercial residential mortgage" subject to Act 6.  (Id.).

FBCC has introduced no evidence to suggest that the bankruptcy court erred in finding that the claim objection is not barred by judicial estoppel.  FBCC fails to adduce documentation in the record suggesting that debtor took an inconsistent position, whether in this case or in the 1992 bankruptcy action, regarding the application of Act 6 to the instant loan transaction.  See, e.g., Mara v. Mara, 831 A.2d 1183, 1187 (Pa. Super. Ct. 2003)  (denying judicial estoppel argument when litigant takes no inconsistent statements).[4]  Furthermore, as the bankruptcy court indicated, there is no inconsistency in classifying a transaction as a business loan, but in then seeking the protections of Act 6 because the loan is secured by a "residential mortgage" within

_____

    [4]Pennsylvania law, rather than federal common law, determines whether debtor is judicially estopped from raising violations of Act 6 as a recoupment defense.  See, e.g., Linan Faye Constr. Co., Inc. v. Housing Auth. of City of Camden, 49 F.3d 915, 933 (3d Cir. 1995) (looking to New Jersey law to determine whether defendant is judicially estopped from refusing to pay compensation in connection with plaintiff's state law claims).

the meaning of that statute. (See Opinion, at 8 n.14). Absent any affirmative evidence to the contrary, this Court refuses to disturb the bankruptcy court's finding on this issue.

### 3.     Collateral Estoppel

FBCC further argues that the bankruptcy court erred in concluding that debtor was not collaterally estopped from raising FBCC's alleged Act 6 violations as a recoupment defense. (See FBCC's Br., at 19). FBCC argues that principles of collateral estoppel preclude debtor from re-litigating the applicability of Act 6 to the note and mortgage because the debtor failed to raise the alleged Act 6 violations in response to the confessed judgment action against debtor's husband in the Court of Common Pleas for Montgomery County. (Id.).

Under Pennsylvania law, the doctrine of collateral estoppel precludes re-litigation of an issue when: (1) the issue decided in the prior case is identical to the one presented in the later action; (2) there was a final adjudication on the merits; (3) the party against whom the claim is asserted was a party or in privity with a party in the prior case; (4) the party or person in privy with the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the prior proceeding; and (5) the determination in the prior proceeding was essential to the judgment. See, e.g., Office of Disciplinary Counsel v. Kiesewetter, 889 A.2d 47, 50-51 (Pa. 2005).

Again, this Court affirms the bankruptcy court's decision for the very reason expressed in the bankruptcy court's opinion: that a state court confessed judgment on a residential mortgage subject to the protections of Act 6, standing alone, does not constitute a "final adjudication" on the merits of a particular issue. (See March 11, 2005 Opinion, at 6 n.13). This conclusion becomes palpable after analyzing the treatment of confessed judgments under Act 6.

Section 407 of Act 6 does not permit a plaintiff to execute a confessed judgment on "residential real property" until the plaintiff files, prosecutes, and obtains a judgment in a separate civil action in which the parties enjoy all the rights they retain in other proceedings.  41 P.S. § 407(a).  The court in which this post-confessed judgment action is brought then has the power to change or modify the confessed judgment prior to enforcement.  Id.  As one court has stated, "[w]hile not eliminating confessed judgments, section 407 [of Act 6] essentially renders them a nullity in all instances in which the section applies."  In re Olick, 221 B.R. 146, 151 (Bankr. E.D. Pa. 1998).

The procedural nuances of Act 6 preclude a finding of finality as to a confessed judgment on a residential mortgage, or as to any issues raised during the proceedings to obtain the initial confessed judgment.  Indeed, pursuant to § 407, a confessed judgment on residential real property, the type of property at issue in this litigation,[5] cannot serve as a final adjudication on the merits of a particular issue because this issue may be re-litigated anew in a separate legal proceeding, where the parties are free to raise all available claims and defenses.  See, e.g., In re Olick, 221 B.R. at 151-152 (holding that doctrine of merger, a rule of res judicata that merges all plaintiff's claims into plaintiff's judgment at end of legal proceeding, does not apply to confessed judgments on residential property subject to § 407 of Act 6 because such judgments are not final within meaning of res judicata doctrine); 22 Standard Pa. Practice 2d § 121:87 (2005) ("A confessed judgment against residential property is not a final judgment in the usual sense because

---

[5] Act 6 defines "residential real property" as "real property located within this Commonwealth containing not more than two residential units or on which not more than two residential units are to be constructed and includes a residential condominium unit." 41 P.S. § 101.  The property subject to the mortgage consists of a single residential unit in a condominium complex, thereby meeting this definition.

its enforceability will be determined by the results of a subsequent proceeding in which the parties are free to litigate the matter anew, raising all possible claims or defenses."). Nor has FBCC indicated that, following the procedures of § 407, it filed a separate civil action against debtor's husband and obtained a judgment enforcing the confessed judgment. See, e.g., Romah v. Romah, 600 A.2d 978, 978 n.1 (Pa. Super. Ct. 1991) (suggesting that *res judicata* effect not given to confessed judgments subject to § 407 of Act 6, unless procedural requirements of § 407 have been satisfied). Accordingly, the bankruptcy court correctly denied FBCC's collateral estoppel argument concerning the unavailability of Act 6.

### B.      Substantive Applicability of Act 6

FBCC challenges the bankruptcy court's substantive conclusions that the transaction at issue falls within the substantive purview of Act 6, thereby triggering Act 6's interest ceiling and its limitation on recoverable attorney's fees. (See FBCC's Br., at 6-7, 15-16, 20-22). FBCC makes the following arguments: (i) that the loan is not secured by a "residential mortgage" within the meaning of Act 6; (ii) that the loan exceeded the business loan threshold and therefore does not implicate Act 6's interest ceiling; and (iii) that FBCC complied with the procedural and substantive requirements of Act 6's provisions pertaining to the recovery of attorney's fees. (Id.).

### 1.      Residential Mortgage

FBCC challenges the bankruptcy court's determination that the loan is secured by a "residential mortgage," and therefore falls within the scope of Act 6. (See FBCC's Br., at 6-7, 15). Specifically, FBCC argues that the loan does not meet the definition of "residential mortgage" because the purpose behind the loan was to pay the debt of a business enterprise and because the principal amount of the loan exceeded $50,000, once unpaid interest is combined

13

with principal under the terms of loan.  (Id.).

This Court rejects FBCC's arguments.  Section 101 of Act 6 defines "residential

mortgage" in the following manner:

> [a]n obligation to pay a sum of money in an original bona fide principal amount of fifty
> thousand dollars ($50,000) or less, evidenced by a security document and secured by a
> lien upon real property located within the Commonwealth containing two or fewer
> residential units or on which two or fewer residential units are to be constructed and shall
> include such an obligation on a residential condominium unit.

41 P.S. § 101.   Under § 101, the definition of "residential mortgage" contains three primary

elements: (i) a monetary requirement that the secured loan include a principal of $50,000 or less;

(ii) a documentation requirement that the borrower execute a document granting the lender a lien

upon real property located within the Commonwealth; and (iii) a physical requirement that the

property subject to the lien contains two or fewer residential units.  Id.[6]

### a.      Physical Requirement

The bankruptcy court correctly held that the physical component element of the definition

of residential mortgage in Act 6 is contingent upon the composition of the property securing the

loan, rather than upon the purpose for which the lendee borrowed the money secured by this

property.   (See March 11, 2005 Opinion, at 6).  This conclusion comports with the plain

language of the statute and with Pennsylvania case law interpreting this statute. See 41 P.S. § 301

("residential mortgage" covers transaction secured by property covering "two or fewer residential

units"); General Electric Credit Corp. v. Slawek, 409 A.2d 420, 422 (Pa. Super. Ct. 1979)

(mortgagee's lien on residential property constitutes "residential mortgage," although mortgagor

---

[6]FBCC does not challenge debtor's satisfaction of the second component of this
definition, conceding that debtor executed a mortgage granting FBCC a lien on the property in
exchange for the loan.  (See Mortgage, attached as Ex. 11).

used loan transaction to finance purchase of sailboat rather than for improvement of residential property).   Nor does FBCC cite any case law interpreting the definition of "residential mortgage" according to the purpose of the loan.[7]  Accordingly, because the property consisted of one residential unit of a condominium complex, the Court affirms the bankruptcy court's determination that the note and mortgage were secured by real property within Act 6's definition of "residential mortgage." (See March 11, 2005 Opinion, at 3; FBCC Br., at 5).

### b.   Monetary Requirement

The bankruptcy court also correctly held that the note and mortgage satisfied the monetary element of the definition of "residential mortgage."  (See March 11, 2005 Opinion, at 5).  Initially, this Court agrees with the bankruptcy court's determination that the principal amount of a loan must be measured at the time of the consummation of the transaction, rather than at subsequent dates, such as after the accrual of interest on unpaid balances.  This methodology comports with the statutory definition of "residential mortgage," which specifies the "*original* bona fide principal amount" of the mortgage, rather than successive re-calculations of principal, as the controlling factor in determining qualification for the protections of Act 6.  41 P.S. § 101 (emphasis added); Slawek, 409 A.2d at 423 n.5 (measuring $50,000 threshold for

---

[7]FBCC's reliance on In re DiPietro, 136 B.R. 773, 778 (Bankr. E.D. Pa. 1992),  is misplaced.  In re DiPietro stands for the proposition that the definition of "business loan" for purposes of § 301(f)(v) of Act 6 requires consideration of the purpose for which the funds are being utilized, as prescribed by the regulations promulgated by Pennsylvania's Secretary of Banking.  Id. at 778; see 10 Pa. Code § 7.2 (defining "business loans" as "extensions of credit where the funds are to be utilized in a business enterprise," where the borrower performs the managerial decision-making of the enterprise, and where the borrower signs an affidavit setting forth the intended use  of the proceeds).  The bankruptcy court's construction of "business loan" in In re DiPietro, according to the factors prescribed by the accompanying regulations to Act 6, is simply irrelevant to the definition of "residential mortgage" under § 101 of Act 6.

applicability of Act 6 at time of execution of note, prior to accumulation of interest after defaults

on principal amount, and differentiating principal and finance charges/additional costs in loan of

$65,849.78.  Furthermore, making the definition of "residential mortgage" contingent upon the

timeliness or untimeliness of a mortgagor's payments generates unpredictability as to those rights

that demand reification at the outset of the loan transaction and that must remain fixed and

knowable throughout the loan relationship, such as the applicable interest rate in loan

transactions, the appropriate procedure for foreclosing on residential mortgage loans in default,

and the availability of a debtor's right to cure a default.  This unpredictability, in turn, carries the

potential both to remove usurious loans from the protections of Act 6 and to deter borrowers

from seeking residential mortgage loans, thereby undermining the chief purposes behind Act 6.

See, e.g., In re Schwartz, 68 B.R. 376, 394 (E.D. Bankr. 1986) (finding that "Act 6 was passed at

a time when Pennsylvania faced a crisis due to the unavailability of residential mortgage loans"

and liberally construing Act 6 in favor of homeowners); Smith v. Mitchell, 616 A.2d 17, 20 (Pa.

Super. Ct. 1992) (purpose of Act 6 is to protect the citizenry of Pennsylvania by setting forth

with clarity the legal rate of interest in loan transactions secured by residential property); Beckett

v. Laux, 577 A.2d 1341, 1343 (Pa. Super. Ct. 1990) (chief function of Act 6 is to offer

"homeowners with 'residential mortgages' a measure of protection from overly zealous

'residential mortgage lenders'").  In other words, the rolling applicability of Act 6 to a particular

loan transaction belies the effectiveness of many of Act 6's pro-borrower provisions, many of

which not only provide a defense to foreclosure proceedings, but also seek to avoid usurious

transactions and ultimate foreclosure proceedings by prohibiting parties from "entering" into or

"contracting" for residential mortgages that charge in excess of prescribed maximum interest

rates.  41 P.S. § 301(b) (setting maximum interest rate for residential mortgages "entered into or contracted for"); id. § 501 (borrower not required to pay contracted for interest rate in excess of that prescribed by Act 6).

Using the "original" principal amount–and not subsequent modifications of this amount after payment or non-payment--as the sole gauge for evaluating whether a debt qualifies as a "residential mortgage," it is clear that debtor's note and mortgage satisfy this monetary requirement.  For instance, the note defines the "principal sum" as "$10,000" or "so much of said principal sum as shall have been advanced," which, in this case, consisted of $6,626.00. (See Note, attached as Ex. 11).  Moreover, both the note and mortgage uniformly distinguish between the outstanding "principal balance" and all remaining charges, including interest and fees.  (Id.; Mortgage, attached as Ex. 11).  Accordingly, this Court affirms the bankruptcy court's conclusion that the "original bona fide principal amount" of the loan did not exceed $50,000.[8]

## 2.      Maximum Lawful Rate of Interest

FBCC argues that even if Act 6 applies, the bankruptcy court erred in finding that the loan at issue is subject to the maximum lawful rate of interest, as prescribed by 42 P.S. § 301. (See FBCC's Br., at 20).  FBCC further argues that the bankruptcy court erred by denying FBCC compound interest on the debt, reasoning that the bankruptcy court failed to acknowledge the parties' contractual arrangement to apply a compound interest formula, as opposed to a simple interest formula, to the unpaid balance of the loan.  (Id.).

_____

[8]Even if this Court measured the principal amount of the loan after the accrual of interest, rather than at the original moment of the transaction's consummation, the loan would still satisfy this monetary requirement, as the note never expressly stipulated that original principal and unpaid interest would merge into a new principal balance at a given point in time.

a.      **Business Loan Exception**

Section 301 imposes a interest ceiling on applicable residential mortgage transactions:

> The maximum lawful rate of interest for residential mortgages, as defined in this act, entered into or contracted for during any calendar month shall be equal to the Monthly Index of Long Term United States Government Bond Yields for the second preceding calendar month plus an additional two and one-half per cent per annum rounded off to the nearest quarter of one per cent per annum.

41 P.S. § 301.   The Secretary of Banking is required to determine and publish this rate in the Pennsylvania Bulletin, which, at the time of the execution of the note and mortgage, was 10% per year.  41 P.S. § 301(b)-(c).[9]  Importantly, however, § 301 specifically exempts from this interest ceiling all "business loans the principal amount of which is in excess of ten thousand dollars." Id. §  301(f)(v).

This Court affirms the bankruptcy court's determination that the loan at issue is subject to the interest ceiling of § 301.  It is clear, as the bankruptcy court found, that the loan was used to pay off a business debt, and therefore constitutes a "business loan" within the meaning of § 301. It is also clear that the "principal amount" of the loan was not in "excess" of $10,000 at the consummation of the transaction, the time at which the "principal amount" must be measured.[10] Consequently, because the loan falls under the aegis of § 301, as the bankruptcy court correctly held, the maximum lawful rate of interest is 10% and debtor need not pay the excess interest.  41

_____

[9]The bankruptcy court applied this 10% interest rate.  (See March 11, 2005 Opinion, at 8). Neither party disputes the validity of this interest rate to residential mortgages at the time of the execution of the note and mortgage in February 1992.

[10]The same reasons which require measurement of principal at the time of a transaction's consummation for purposes of determining whether a loan agreement meets the definition of a "residential mortgage" under § 101 also support determining a loan's "principal" for purposes of the business loan exception to § 301 at the time the loan agreement is executed.

18

P.S. § 501 (borrower need not pay amount of excess interest over maximum interest rate prescribed by Act 6); Mulcahy v. Loftus, 267 A.2d 872, 873 (Pa. Super. Ct. 1970) (provision of note that charges usurious interest rate in violation of Act 6 is voidable, although note itself not void).[11]

### b.     Type of Interest

This Court also affirms the bankruptcy court's determination that compound interest is inappropriate because the note and mortgage fail to delineate the manner in which interest is to be computed.  (See March 11, 2005 Opinion, at 8).

Compound interest denotes "interest paid on both the principal and the previously accumulated interest," while simple interest refers to "interest paid on the principal only and not on accumulated interest."  Black's Law Dictionary 816-817 (7th ed. 1999).  Pennsylvania law disfavors compound interest, unless the parties contractually agree to the payment of compound interest or a statute expressly authorizes it.  See, e.g., Fairmont Holdings v. Blumenfeld Holdings Corp., 1990 WL 892, at *3 (E.D. Pa. Jan 3, 1990) (applying simple interest rate to principal balance when agreement does not specific between compound interest or simple interest, as Pennsylvania law favors simple interest on debt); Powell v. Ret. Bd. of Allegheny County, 246 A.2d 110, 115 (Pa. 1968) (requiring district court on remand to compute amount of award based upon simple interest because Commonwealth "frowns upon compound interest and as such will

---

[11]Assuming *arguendo* that it was premature to characterize the instant loan as a "business loan" within the meaning of § 301 at the time of its execution, debtor's note and mortgage would still fail to meet the business loan exception.  Indeed, because there is no express statement in the mortgage or note providing that interest merges with principal to determine a new principal amount, the principal amount of the loan, independent of interest, never exceeded $10,000 at any point.

only permit compound interest on a debt when the parties have provided for it by agreement or a statute expressly authorizes it"); <u>Moyer v. Berks County Bd. of Assessment Appeals</u>, 803 A.2d 833, 843 (Pa. Commw. Ct. 2002) (same).

The loan documents fail to specify that interest should be calculated according to a compound interest formula.   For instance, the note stipulates that interest "shall accrue on the outstanding principal balance hereof at the rate of 18.36% per annum."   (<u>See</u> Note, at ¶ C).   It does not indicate whether unpaid interest blends with the principal balance to formulate the "outstanding principal balance," or whether the yearly interest rate of 18.36% applies solely to the original outstanding principal balance.   Nor does the mortgage expressly indicate whether interest accrues on both principal and previously accumulated interest.   Consequently, because the note is silent on the methodology for calculating interest, this Court affirms the bankruptcy court's conclusion that FBCC's proof of claim must be limited to simple interest on debtor's principal balance.

### 3.     Maximum Amount of Attorney's Fees

FBCC contends that the bankruptcy court impermissibly modified both the mortgage and note by denying FBCC the recovery of attorney's fees in connection with the loan.   (<u>See</u> FBCC's Br., at 20-22).   FBCC challenges the bankruptcy court's reasons for denying FBCC the recovery of attorney's fees:  that FBCC never provided notice for the recovery of these fees in accordance with § 403; and that § 407 of Act 6 prohibits FBCC from recovering such fees as part of a contested bankruptcy proceeding.   (<u>Id</u>.).

The allowance of attorney's fees in a proof of claim is governed by § 506(b) of the bankruptcy code.  This section provides that:

> [t]o the extent that an allowed secured claim is secured by property the value of which, after any recovery under subsection (c) of this section [pertaining to trustee's ability to recover costs of preserving or disposing of such property], is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement which such claim arose.

11 U.S.C. § 506(b).  Courts interpreting § 506(b) impose a four-prong test for the recovery of attorney's fees as part of a proof of claim, requiring the fee to be: (i) allowable under the terms of § 506(b); (ii) provided for in the parties' agreement; (iii) reasonable; and (iv) allowable under state law.  In re Olick, 221 B.R. at 152-153.

Act 6 is the applicable state law.  Section 406 of Act 6 states that "no residential mortgage lender shall contract for or receive attorney's fees from a residential mortgage debtor," subject to three exceptions.  See 41 P.S. § 406.  These three exceptions include: (i) reasonable attorneys fees included in actual settlement costs; (ii) reasonable attorney's fees incurred by a residential mortgage lender upon commencement of foreclosure or other legal action with respect to a residential mortgage; and (iii) reasonable attorney's fees incurred prior to commencement of foreclosure or other legal action, but not in excess of fifty dollars.  Id. § 406(1)-(3).  In addition, a residential mortgage lender must provide thirty days notice prior to commencing a legal action to foreclose on a residential mortgage obligation.  See 41 P.S. § 403(a).  This notice must comply with the procedural requirements of § 403(b)-(c).  Id.

### a.    Notice

This Court affirms the bankruptcy court's finding that FBCC never provided notice in accordance with § 403 of Act 6, a prerequisite for the recovery of attorney's fees in connection with the commencement of "other legal action" within the meaning of § 406(2).  (See March 11,

21

2005 Opinion, at 10).  Although FBCC suggests that it provided thirty days advance notice to

debtor and her husband of the confessed judgment action in the Montgomery County Court of

Common Pleas, FBCC fails to identify the location of this evidence in the appellate record.  Nor

does FBCC identify evidence in the record to demonstrate technical compliance with the

conditions of § 403(b)-(c).  See, e.g., Flores v. Shapiro & Kreisman, 246 F. Supp. 2d 427, 431

(E.D. Pa. 2001) (noting that no legal expenses may be charged prior to sending thirty day notice

and that Act 6 contemplates that "a lender will not receive full reimbursement for legal expenses

incurred").

<b>b.      Other Legal Action</b>

This Court also affirms the bankruptcy court's conclusion that § 406(2) of Act 6 prohibits

FBCC from collecting attorney's fees in connection with this bankruptcy court litigation.  (See

March 11, 2005 Order, at 10).

Bankruptcy courts in the Third Circuit have consistently declared that the phrase "other

legal action" in § 406(2) only refers to "the different forms of legal action under state law which

a mortgage lender may utilize to enforce its rights against the mortgagor." In re Detone, 262 B.R.

359, 362 (Bankr. E.D. Pa. 2001); In re Schwartz, 68 B.R. at 382-384 (reviewing legislative

history and holding that "other legal action" in § 406(2) refers not to creditor's relief from

automatic stay in debtor's bankruptcy matter, even though relief from stay is prerequisite to

commence foreclosure proceedings under state law against debtor, but to "different forms of

legal action under state law which a mortgagee may employ to enforce its rights against the

mortgagor").  Federal bankruptcy court proceedings, such as those in which a mortgagee seeks

relief from a stay or those involving proof of claim litigation, fail to constitute "other legal

22

action" within the meaning of § 406(2), thereby preventing a residential mortgage lender from charging debtors the full amount of attorney's fees incurred, regardless of the terms of the note and mortgage.  See, e.g., In re Olick, 221 B.R. at 154 (creditor may not obtain attorney's fees under § 406(2) of Act 6 in connection with bankruptcy court litigation to collect debt, as "Act 6 prevents the collection of attorney's fees in bankruptcy court litigation"); In re Vitelli, 93 B.R. 889, 897 (Bankr. E.D. Pa. 1989) (mortgagee may not recover post-petition attorney's fees in connection with filing and defending proof of claim in bankruptcy litigation, as phrase "other legal action" in § 406(2) "refers only to legal proceedings to enforce a mortgage obligation in the manner of a foreclosure action, and not to a matter filed to attempt to advance the mortgagee's position in bankruptcy court").

This Court adopts this prevailing interpretation of "other legal action" in § 406(2), concluding that Act 6 precludes a mortgagee/creditor from recovering attorney's fees incurred in bankruptcy court litigation against a mortgagor/debtor.   The Court further notes that FBCC provides no case law to the contrary.  Nor does FBCC present references to the legislative history of Act 6 to demonstrate that bankruptcy court litigation between a mortgagor/debtor and mortgagee/creditor was intended to be included within the definition of "other legal action" in § 406(2) of Act 6.   In fact, FBCC offers no legal support for its contention.  Finally, FBCC's attempts to distinguish the aforementioned holdings interpreting § 406(2) as applying only when a mortgage holder unnecessarily attempts to generate significant legal fees through spurious claims in bankruptcy court prove otiose, ignoring the statutory interpretation upon which these decisions are based.

### c.    Conclusion

In summary, because a residential mortgage lender can neither recover attorney's fees without providing "notice" in accordance with § 403 nor recover attorney's fees under § 406(2) in connection with federal bankruptcy court proceedings, those provisions in the note and mortgage, to the extent they allow for the recovery of such fees, are unenforceable.  See 41 P.S. § 408 (provisions of Act 6 may not be waived by any oral or written agreement).

**III.    Conclusion**

For the preceding reasons, this Court affirms the March 11, 2005 Order of the bankruptcy court limiting FBCC's proof of claim according to the terms of Act 6.  An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN THE MATTER OF | : | CHAPTER 13 |
| MARY ANN GRAYBOYES, | : | |
| Debtor | : | Bkrtcy No. 02-33530-KJC |

_____

| | | |
|---|---|---|
| | : | |
| FIRST BUSINESS CREDIT CO., | : | CIVIL ACTION |
| Appellant, | : | |
| v. | : | |
| | : | No.  05-1780 |
| | : | |
| MARY ANN GRABOYES, | : | |
| Appellee. | : | |

## **ORDER**

AND NOW, this 22nd day of February 2005, upon consideration of appellant's brief in support of its appeal to reverse in part the bankruptcy court's March 11, 2005 Order (Doc. No. 3), appellee's response in opposition (Doc. No. 4), and appellant's reply brief thereto (Doc. No. 7), it is hereby ORDERED as follows:

1.     Appellant's appeal is DENIED in its entirety.

2.     The March 11, 2005 Order of the bankruptcy court is AFFIRMED.

3.     The Clerk of Court is directed to close this action for statistical purposes.

BY THE COURT:

/S/LEGROME D. DAVIS
Legrome D. Davis, J.